UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

APACE COMMUNICATIONS, LTD.,
RAKESH AGGARWAL,


                              Plaintiffs,


                                                    DECISION AND ORDER

                                                    07-CV-6151L


                    v.


JEFFREY BURKE,
DAVID KLEIN,
MICHAEL BENEDICT,
STEVEN HYDE,
DAVID GRAINGER,
EMPIRE BEEF CO., INC., d/b/a
Empire Beef & Redistribution Co.,
STEVEN LEVINE,
LORI LEVINE,
CEPHAS CAPITAL PARTNERS, LP
JEFFREY HOLMES,
CLINT CAMPBELL,
CEPHIRE TECHNOLOGIES,
TIMOTHY BEERS,


                              Defendants.

_____


        Plaintiffs Apace Communications, Ltd. ("Apace") and Rakesh Aggarwal have commenced

this action against thirteen defendants, alleging that they were fraudulently induced to invest in a

company named NetSetGo (sometimes referred to in the complaint as "the Company").  Plaintiffs

allege that as a result of defendants' misrepresentations concerning NetSetGo's financial health,

Apace lost millions of dollars that it had invested in NetSetGo.  Jurisdiction is premised on diversity of citizenship under 28 U.S.C. § 1332.[1]

Nine defendants have moved to dismiss the complaint for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  After these motions were filed, plaintiffs filed a motion for leave to amend the complaint.  For the reasons that follow, defendants' motions are granted, and plaintiffs' motion is denied, but plaintiffs are granted leave to file a further motion seeking leave to amend, with a new proposed amended complaint.

## BACKGROUND

The following facts are taken from the complaint.  NetSetGo was founded in 1999 by defendants Jeffrey Burke and David Klein as a "full-service e-commerce and internet service provider for small and mid-sized companies."  Complaint ¶ 21.  Plaintiff Apace is a British Virgin Islands corporation with its principal place of business in the United States.  It was formed in 1999 "as a vehicle to invest in other businesses."  Complaint ¶ 7.  Plaintiff Aggarwal is a citizen of Singapore and an officer of Apace.

The 37-page complaint alleges, at some length if not in great detail, that Apace was fraudulently induced by defendants to invest millions of dollars in NetSetGo, over a period of several years beginning in March 2001.  Although NetSetGo had initially experienced rapid growth after its

---

[1]Plaintiffs have voluntarily withdrawn their claims against defendants Steven Hyde and David Grainger.  Accordingly, plaintiff's claims against those two defendants are dismissed.

founding, by 2001 it was in debt and in need of additional capital to meet its obligations. Defendants allegedly sought to obtain that capital from Apace.

Plaintiffs allege that in March 2001, "Apace was approached by representatives of NetSetGo to invest in the Company." Complaint ¶ 22. Burke, Klein "and others of the Company" represented to Aggarwal and Apace that NetSetGo was in far better financial shape than it actually was, and that NetSetGo simply needed additional capital to expand its operations.

According to the complaint, several other defendants, such as Steven and Lori Levine ("the Levines") and Cephas Capital Partners, LP ("Cephas"), who were secured creditors of NetSetGo, also allegedly participated in the fraud, by seeking to "draw[] Apace into investing millions of dollars in NetSetGo while concealing the Company's poor financial condition and prospects." Complaint ¶ 31. These defendants' purpose in doing so was simply to protect their own interests, by using the funds provided by Apace to protect defendants' previously-made investments in, and loans to, NetSetGo.

Despite having millions of dollars to invest in other companies, Apace allegedly "had limited experience in investing generally, and NetSetGo was its first U.S. financial transaction." Complaint ¶ 29. Apace was also not represented by an attorney during any of these discussions or events, but only by Aggarwal, who, it is claimed, was also something of a novice at investing. *See* Complaint ¶ 63 ("Apace was ... unrepresented by counsel in its negotiations and contract preparations with representatives of the Company").

Again, according to the complaint, in reliance on defendants' various misrepresentations, Apace agreed to a series of "investments" in NetSetGo, including $500,000 in March 2001 in

exchange for NetSetGo stock, Complaint ¶ 32, and an additional investment of $5.5 million in April 2001.  Complaint ¶¶ 35, 36.  In exchange for the latter investment, Apace received 62% of the outstanding common stock in NetSetGo, and Aggarwal was given a position on NetSetGo's Board of Directors.

In October 2001, "defendants" persuaded Apace to loan NetSetGo an additional $2.5 million, in exchange for a security interest in NetSetGo's assets.  Complaint ¶ 47.  Defendants never drafted or filed a security agreement, though, and allegedly never intended to give Apace any security interest (which would have been meaningless anyway, since Apace's right to repayment would have been subordinated to other defendants' interests).

In early 2002, defendants began making plans to establish a successor company to NetSetGo, and to transfer all of NetSetGo's assets to the successor company.  This was allegedly spurred in part by defendants' realization that the Apace well was running dry; in February 2002, defendants had unsuccessfully attempted to persuade Apace to invest an additional $1.1 million in NetSetGo, and in October 2002, Apace indicated that it was unwilling to make further investments in NetSetGo unless Cephas and the Levines did the same.

The complaint alleges that defendants' plans came to fruition in December 2002, when NetSetGo's assets were purchased at a foreclosure sale by the sole bidder, "NSG Acquisition Corp.," a company allegedly owned by the secured creditors of NetSetGo.  Later that month, NSG Acquisition Corp. filed an amended certificate of incorporation renaming it "Cephire Corp." Defendant Michael Benedict, who had been the Chief Operating Officer of NetSetGo, was listed as President of Cephire, and Cephas and Steven Levine were listed as secured creditors of Cephire.

Complaint ¶¶ 60, 61.  Cephire essentially ran the same business as NetSetGo had, using the same employees, equipment and suppliers.  Complaint ¶ 62.  Apace has never recovered any of its investments in NetSetGo.  Complaint ¶ 60.

The complaint asserts eight causes of action:  (1) fraud against all defendants; (2) aiding and abetting fraud against Cephas, Jeffrey Holmes (a managing director and partner of Cephas), Clint Campbell (also a managing director and partner of Cephas), and the Levines; (3) constructive fraud against all defendants; (4) negligent misrepresentation against all defendants; (5) breach of fiduciary duty against Burke, Klein and Benedict, by virtue of their superior knowledge of NetSetGo's financial condition vis-a-vis plaintiffs; (6) breach of fiduciary duty by Burke and Klein as directors of NetSetGo; (7) fraudulent conveyance against Benedict, Cephas, Holmes, Campbell, and the Levines; and (8) successor liability against the Levines, Cephas and Cephire.

## PENDING MOTIONS

On June 18, 2007, plaintiffs filed a 51-page amended complaint (Dkt. #51), and a motion for leave to amend the complaint (Dkt. #52).  At that point, seven defendants, none of whom had answered the complaint, had filed motions to dismiss the complaint.  Plaintiffs thus filed the amended complaint as of right as to those defendants, and sought leave to amend as to the remaining defendants, who had answered the complaint.  *See Barksdale v. King*, 699 F.2d 744, 747 (5th Cir. 1983) (where some but not all defendants have answered, plaintiff may amend, as of course, claims

asserted solely against non-answering defendants); *Pemrick v. Stracher*, No. 92 CV 959, 2005 WL 2921621, at *3 (E.D.N.Y. Nov. 4, 2005) (same).

The amended complaint asserts essentially the same claims as the original complaint, but adds one defendant, Timothy Beers (who has not yet appeared in this action), drops defendants Hyde and Grainger, *see* n. 1, *supra*, and adds two claims. The first is a claim for damages to Aggarwal's reputation, and is asserted against the Levines, Empire Beef Co., Inc. ("Empire," which is a corporation allegedly under the direction and management of Steven Levine), Cephas, Benedict, Klein, Burke, Holmes and Campbell.[2] The second is a breach of contract claim against Levine, Empire, Cephas, Benedict, Campbell and Beers, based on an alter ego theory, *i.e.*, that those defendants' treatment of NetSetGo as a mere instrumentality for their own private business renders them liable for NetSetGo's alleged breach of the loan agreement between it and Apace.

As stated, a number of motions to dismiss are also pending. Defendants Klein, the Levines, Cephas, Holmes and Campbell have filed pre-answer motions to dismiss for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Defendant Burke has answered the complaint, and has also filed a post-answer motion to dismiss under Rule 12(b)(6), which I treat as a motion for judgment on the pleadings pursuant to Rule 12(c). *See MacDonald v. Grace Church Seattle*, 457 F.3d 1079, 1081 (9th Cir. 2006); *Byrne v. Nezhat*, 261 F.3d 1075, 1096 n. 46 (11th Cir. 2001); *Lanigan v. Village of East Hazel Crest, Illinois*, 110 F.3d

---

[2]On September 6, 2007, Empire filed a voluntary petition under Chapter 11 of the Bankruptcy Code in the Bankruptcy Court for the Western District of New York. Empire's filing of that petition automatically stayed plaintiffs' claims against Empire. *See* 11 U.S.C. § 362(a).

467, 470 n. 2 (7th Cir. 1997); *Pilchman v. Department of Defense*, 154 F.Supp.2d 415, 419 (E.D.N.Y.

2001).[3]


## DISCUSSION


### I. Fraud Claims:  Pleading Standards

To state a cause of action for fraud under New York law, "a plaintiff must allege a

representation of material fact, the falsity of the representation, knowledge by the party making the

representation that it was false when made, justifiable reliance by the plaintiff and resulting injury."

*Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290  (2[d] Cir. 2006) (quoting *Kaufman v. Cohen*, 307

A.D.2d 113, 119 (1st Dep't 2003).

Although not all of plaintiffs' claims are denominated as fraud claims, nearly all of them are

based on plaintiffs' allegations of fraud.  Therefore, as to each of these causes of action, plaintiffs

must not only plead the elements of the relevant claim under New York law, but they must also meet

the pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure, which provides that

"[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be

stated with particularity."

In order to comply with Rule 9(b), "the complaint must: (1) specify the statements that the

plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements

---

[3]In addition, defendant Hyde moved to dismiss, but plaintiffs have withdrawn their claims against Hyde.  *See* n. 1, *supra*.  Empire has also moved to dismiss, but plaintiffs' claims against Empire are stayed, *see* n. 2, *supra*.

were made, and (4) explain why the statements were fraudulent." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2[d] Cir. 2006) (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2[d] Cir. 1993)). "The primary purpose of Rule 9(b) is to afford defendant fair notice of the plaintiff's claim and the factual ground upon which it is based." *Novak v. Kasaks*, 216 F.3d 300, 314 (2[d] Cir. 2000) (quoting *Ross v. Bolton*, 904 F.2d 819, 823 (2[d] Cir. 1990)).

Rule 9(b) further provides that ""[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally." Fed. R. Civ. P. 9(b). The Second Circuit has cautioned, however, that because "we must not mistake the relaxation of Rule 9(b)'s specificity requirement regarding condition of mind for a license to base claims of fraud on speculation and conclusory allegations[,] ... plaintiffs must allege facts that give rise to a strong inference of fraudulent intent." *Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 52 (2[d] Cir. 1995) (internal quotation marks and citation omitted). *See also Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of New York*, 375 F.3d 168, 187 (2[d] Cir. 2004) ("this leeway is not a 'license to base claims of fraud on speculation and conclusory allegations'") (quoting *Acito*, 47 F.3d at 52)). "The requisite 'strong inference' of fraud may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2[d] Cir. 1994).

In addition, even with respect to claims other than fraud, the Supreme Court has recently stiffened the pleading standards under the Federal Rules. For many years, federal courts, relying on the statement in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be

dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," had denied motions to dismiss where any conceivable set of facts consistent with the allegations of the complaint would entitle the plaintiff to relief.  *See, e.g.*, *Taylor v. Vermont Dep't of Educ.*, 313 F.3d 768, 788 (2$^d$ Cir.  2002); *Beck v. Deloitte & Touche*, 144 F.3d 732, 735 (11th Cir. 1998); *Inman v. Klockner-Pentaplast of Am., Inc.*, 467 F. Supp.2d 642, 648 (W.D.Va. 2006).

In *Bell Atl. Corp. v. Twombly*, ___ U.S. ___, 127 S.Ct. 1955, 1964-74 (2007), however, the Court "retire[d]" *Conley*'s "no set of facts" language.  *Twombly*, 127 S.Ct. at 1968-69.  An analysis of whether a plaintiff has satisfied Rule 8's requirement that a pleading set forth "a short and plain statement of the claim showing that the pleader is entitled to relief," the Court explained, turns on the *plausibility*, rather than the *conceivability*, of an actionable claim under the facts alleged. Specifically, the Court held that, to state a claim, a plaintiff's "[f]actual allegations [if true] must be enough to raise a right to relief above the speculative level," and that there must be "plausible grounds to infer" actionable conduct, *i.e.*, enough "to raise a reasonable expectation that discovery will reveal evidence of [actionable conduct]."  *Id.* at 1965.  *See also AD Rendon Communications, Inc. v. Lumina Americas, Inc.*, No. 04-CV-8832, 2007 WL 2962591, at *3 (S.D.N.Y. Oct. 10, 2007) (if plaintiff "ha[s] not nudged [its] claims across the line from conceivable to plausible, [its] complaint must be dismissed") (quoting *Twombly*, 127 S.Ct. at 1974).[4]

---

[4]Although *Twombly* dealt specifically with an antitrust claim, the Second Circuit "ha[s] declined to read *Twombly*'s flexible 'plausibility standard' as relating only to antitrust cases." *ATSI Communications, Inc. v. Shaar Fund, Inc.*, 493 F.3d 87, 98 n. 2 (2$^d$ Cir. 2007) (applying *Twombly* to securities fraud claims) (citation omitted); *see also Arnold Chevrolet LLC v. Tribune Co.*, No. 04-CV-3097, 2007 WL 2743490, at *3 (E.D.N.Y. Sept. 17, 2007) (applying *Twombly* to
(continued...)

Even prior to *Twombly*, fraud claims were subject to the heightened pleading standard of Rule 9(b), as explained above.  *Twombly*, however, reinforces the principle that it is not enough for a plaintiff simply to allege, in broad, conclusory terms, some claim to relief.  Rather, plaintiff's factual allegations must make it at least plausible that the plaintiff is entitled to relief.  *See Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.*, ___ F.3d ___, 2007 WL 3071637, at *2 (2[d] Cir. 2007) (under *Twombly*, "a complaint must allege facts that are not merely consistent with the conclusion that the defendant violated the law, but which actively and plausibly suggest that conclusion") (citing *Twombly*, 127 S.Ct. at 1966); *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2[d] Cir. 2007) (*Twombly* requires that a plaintiff satisfy "a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible").

## II. Application to this Case

Applying these standards to the case before me, I find that plaintiffs have utterly failed to comply with the pleading requirements of Rule 9(b).  The original complaint is woefully inadequate in that regard, and the amended complaint, though somewhat longer, falls far short of curing those deficiencies.

Some examples from the amended complaint are illustrative.  In Paragraph 23, plaintiffs allege that

---

[4](...continued)
fraud claims under New York law); *American Fin. Int'l Group-Asia, L.L.C. v. Bennett*, No. 05 Civ. 8988, 2007 WL 1732427 (S.D.N.Y. June 14, 2007) (applying *Twombly* to claims of, *inter alia*, breach of fiduciary duty and unjust enrichment).

[i]n March 2001, as part of their effort to induce Apace to invest in NetSetGo, Burke, Klein, and others with the Company, with the knowledge and consent of and instruction from the Levines, Empire Beef, Campbell, Holmes, and Cephas, provided Apace with a list of companies which they claimed were customers of NetSetGo. However, these parties well knew when the representation was made that many of the companies on the list were not or were no longer customers of NetSetGo.

Similarly, Paragraph 27 alleges that "Burke, Klein, and others with the Company, with the knowledge, consent and instruction of [Steven] Levine and others within Empire Beef and Campbell and Holmes with Cephas, solicited Apace to invest in the Company and volunteered to provide information to Apace to assist it in making its investment decision." That paragraph goes on to allege that: "these Defendants owed a duty to Plaintiffs to only state the truth"; "a significant disparity existed between Apace and these Defendants"; "Apace reposed its trust in them, which they accepted"; "[t]hese Defendants were in a position superior to Apace because of their greater knowledge of the Company"; "a fiduciary relationship existed between these Defendants and Apace"; "these Defendants intentionally and fraudulently concealed facts about debts of the Company"; and "[t]hey concealed" and "[t]hey falsely represented" certain facts about NetSetGo.

In Paragraph 31, plaintiffs allege that "[t]ime and time again, over a period beginning in late March 2001, these Defendants volunteered false material information and withheld other crucial information about NetSetGo ... ." That paragraph also alleges that "[t]hese representations" included "statements" about certain matters, but the statements are not attributed to anyone in particular. It goes on to state that "the Company's key employees and agents, including representatives of Empire Beef and Cephas, made every effort to conceal facts from Apace ... ."

Numerous other examples could be given, *see, e.g.*, Amended Complaint (Dkt. #51) ¶¶ 32-54, but to do so would be unnecessarily repetitive, since the amended complaint is rife with similar

generalizations and broad, conclusory allegations. Virtually every paragraph is of this ilk. Rather than attribute specific false statements to specific individual defendants, the complaint typically alleges that multiple defendants (whether identified by name or simply as "these defendants" or some similar collective term), sometimes in concert with unnamed "others," made misrepresentations about some general subject matter at "around" certain periods of time (often narrowed down no further than to a particular month).

Such sweeping, undifferentiated allegations clearly do not satisfy Rule 9(b). "Rule 9(b) does not allow a complaint to merely lump multiple defendants together but 'require[s] plaintiffs to differentiate their allegations when suing more than one defendant ... and inform each defendant separately of the allegations surrounding his alleged participation in the fraud.'" *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (quoting *Haskin v. R.J. Reynolds Tobacco Co.*, 995 F.Supp. 1437, 1439 (M.D.Fla. 1998)). "Therefore, in a case involving multiple defendants, ... 'the complaint should inform each defendant of the nature of his alleged participation in the fraud." *Vicom, Inc. v. Harbridge Merchant Services, Inc.*, 20 F.3d 771, 778 (7th Cir. 1994) (finding that allegations stating that misrepresentations were made "at the direction, under the supervision, or with the knowledge and consent" of all the defendants "would appear to fall short of the standards set forth in the caselaw"). *See also Brooks v. Blue Cross and Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1381 (11th Cir. 1997) ("Plaintiffs have simply 'lumped together' all of the Defendants in their allegations of fraud") (quoting *Vicom*, 29 F.3d at 778); *Mills*, 12 F.3d at 1175 ("Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to 'defendants'"); *Sears v. Likens*, 912 F.2d 889, 893 ("A complaint that attributes misrepresentations to all defendants, lumped

together for pleading purposes, generally is insufficient"); *In re Crude Oil Commodity Litigation*, No. 06 Civ. 6677, 2007 WL 1946553, at *6 (S.D.N.Y. June 28, 2007) ("In situations where multiple defendants are alleged to have committed fraud, the complaint must specifically allege the fraud perpetrated by each defendant, and 'lumping' all defendants together fails to satisfy the particularity requirement"); *Sedona Corp. v. Ladenburg Thalmann & Co., Inc.*, No. 03Civ.3120, 2005 WL 1902780, at *12 (S.D.N.Y. Aug. 9, 2005) ("Neither allegations of ability to control or lumped-together accusations of wrongdoing by undifferentiated groups of defendants, is sufficient to satisfy Rule 9(b)"); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Young*, No. 91-civ-2923, 1994 WL 88129, at *7 (S.D.N.Y. Mar. 15, 1994) ("Sweeping references to the collective fraudulent actions of multiple defendants will not satisfy the particularity requirements of Rule 9(b)"); *Ainwick v. European Micro Holdings, Inc.*, 281 F.Supp.2d 629, 640 (S.D.N.Y. Sept. 15, 2003) (Rule 9(b) standards were not satisfied were complaint lumped several defendants together and "fail[ed] to specify what each defendant said").  The complaint here does precisely what the above authority prohibits.

As in many fraud cases involving multiple defendants, it may well be that some of the details of what defendants said *to each other* are within their peculiar knowledge, and are not known to plaintiffs.  Such allegations may be made upon information and belief.  *First Capital Asset Management, Inc. v. Satinwood, Inc.*, 385 F.3d 159, 179-80 (2$^d$ Cir. 2004).  That is not a license to make purely speculative allegations with no factual foundation, however.  *See id.* at 179 ("this does not mean that those matters may be pled lacking any detail at all").  But statements and representations made to the complaining party can and must be set forth with particularity.

- 13 -

What is most glaringly missing here are specific fraudulent statements that defendants allegedly made *to plaintiffs*. Those statements, if they were in fact made, would presumably be at least as well known to plaintiffs as to defendants. *See Arnold Chevrolet LLC v. Tribune Co.*, No. 04-CV-3097, 2007 WL 2743490, at \*3 (E.D.N.Y. Sept. 17, 2007) ("Plaintiffs' claims stem from misrepresentations made to Plaintiffs themselves. Thus, the date, place, and content of the statements are not facts peculiarly within the knowledge of Defendants, but are facts shared by both parties"); *Concorde Funds, Inc. v. Value Lines, Inc.*, No. 04 Civ. 9932, 2006 WL 522466, at \*5 n. 8 (S.D.N.Y. Mar. 2, 2006) ("plaintiff is in as good a position as the defendants are to recall the speakers, dates, and content of the alleged misrepresentations"). There is no basis then, upon which to excuse plaintiffs from pleading such statements with particularity.

Plaintiffs have also failed to plead an adequate claim for aiding and abetting fraud. To plead such a claim, plaintiffs must allege: (1) the existence of a fraud; (2) defendants' knowledge of the fraud; and (3) that defendants provided substantial assistance to advance the commission of the fraud. *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 292 (2[d] Cir. 2006) (citing *JP Morgan Chase Bank v. Winnick*, 406 F.Supp.2d 247, 252 (S.D.N.Y. 2005)).

Not only have plaintiffs failed to allege the underlying fraud with sufficient particularity, they have also failed to adequately allege defendants' knowledge of that fraud. *See Lerner*, 459 F.3d at 292 ("actual knowledge is required to impose liability on an aider and abettor under New York law") (quoting *Kolbeck v. LIT America, Inc.*, 939 F.Supp. 240 (S.D.N.Y. 1996)). Furthermore, it is not enough to allege such knowledge in conclusory fashion; plaintiffs must allege facts which, if true, will "give rise to the 'strong inference,' required by Federal Rule of Civil Procedure 9(b), of actual

knowledge" of the fraud.  *Lerner*, 459 F.3d at 293.  Plaintiffs have not done so, but instead have

pleaded in broad, conclusory terms that the various defendants acted with each other's knowledge

and consent.  *See*, *e.g.*, Amended Complaint (Dkt. #51) ¶¶ 23, 27, 28, 32, 36, 39, 40, 42.

Plaintiffs' fraud claims, and all their claims that are based upon allegations of actual fraud,

must be dismissed for failure to comply with Rule 9(b).[5]  That includes not only Counts 1 and 2, the

claims for fraud and aiding and abetting fraud, but the negligent misrepresentation claim, Count 4,

which also "must be pled in accordance with the specificity criteria of Rule 9(b)," *Aetna Cas. and

Sur. Co. v. Aniero Concrete Co., Inc.*, 404 F.3d 566, 583 (2[d] Cir. 2005) (affirming dismissal of claim

for negligent misrepresentation for failure to comply with Rule 9(b)), as well as the fraudulent

conveyance claim, Count 7, *see Sofi Classic S.A. de C.V. v. Hurowitz*, 444 F.Supp.2d 231, 241

(S.D.N.Y. 2006) ("To the extent that the allegations claim fraudulent conveyance, the allegations are

subject to the heightened pleading standard of Rule 9(b)").

Rule 9(b) also applies to Counts 5 and 6, which assert claims for breach of fiduciary duty

based on defendants' superior knowledge of NetSetGo's financial condition and on Burke's and

Klein's status as directors of NetSetGo.  "Rule 9(b)'s heightened pleading standards apply to breach

of fiduciary duty claims where the breach is premised on the defendant's fraudulent conduct, ... such

as an attempt 'to induce action or inaction on the part of the investors by means of falsehoods or

material omissions.'"  *Henneberry v. Sumitomo Corp. of America*, No. 04 Civ. 2128, 2007 WL

2068346, at *30 (S.D.N.Y. July 12, 2007) (quoting *In re Luxottica Group S.p.A. Sec. Litigation*, 293

F.Supp.2d 224, 238 (E.D.N.Y. 2003)); *accord Cedar Swamp Holdings, Inc. v. Zaman*, 487

---

[5]Plaintiffs' constructive fraud claim is not governed by Rule 9(b), but is nonetheless
subject to dismissal, as explained in § III(A) of this Decision and Order, *infra*.

F.Supp.2d 444, 448 n. 28 (S.D.N.Y. 2007); *Bullmore v. Banc of America Securities LLC*, 485

F.Supp.2d 464, 467 (S.D.N.Y. 2007).  These claims must therefore be dismissed for failure to meet

the pleading requirements of Rule 9(b), as well as for plaintiffs' failure to plead the existence of a

fiduciary relationship between plaintiffs and defendants, as explained in connection with the

constructive fraud claim, *infra*.[6]


## III. Other Claims

## A. Constructive Fraud

"The elements of constructive fraud are the same as those for actual fraud, except that the

element of scienter is replaced by a fiduciary or confidential relationship between the parties."

@*Wireless Enterprises, Inc. v. AI Consulting, LLC*, No. 05-CV-6176, 2006 WL 3370696, at *9

---

[6]Claims for breach of fiduciary duty by corporate directors that are not based on fraud may not be subject to the pleading requirements of Rule 9(b).  *See Thompson v. Linvatec Corp.*, No. 06-CV-0404, 2007 WL 1526418, at *11 n. 6 (N.D.N.Y. May 22, 2007); *In re Xerox Corp. ERISA Litigation*, 483 F.Supp.2d 206 (D.Conn. 2007).  It is clear from the complaint, however, that Count 6, which alleges that Burke and Klein were directors of NetSetGo, Dkt. #51 ¶ 106, is based on their alleged fraudulent activity.  *See* Dkt. #51 ¶¶ 107 (alleging that Burke and Klein "repeatedly misrepresented the facts and withheld material information from Apace").

I also note that this case does not involve an alleged breach of Burke's and Klein's fiduciary duty, as directors of NetSetGo, to act in the best interests of *NetSetGo*; *see Henneberry*, 2007 WL 2068346, at *30 (Rule 8, not Rule 9(b), applies to a claim of breach of fiduciary obligations by a company's directors to act in the best interest of the company and its shareholders) (citing *Luxottica Group*, 293 F.Supp.2d at 238).  In any event, plaintiffs would lack standing to assert such a claim.  *See* N.Y. Bus. Corp. L. § 720 (providing that "[a]n action may be brought against one or more directors or officers of a corporation" based on the directors' or officers' misconduct, by the corporation itself, or by "a receiver, trustee in bankruptcy, officer, director or judgment creditor thereof, or, [in certain circumstances], by a shareholder, voting trust certificate holder, or the owner of a beneficial interest in shares thereof").  *See Friedman v. Mohasco Corp.*, 929 F.2d 77, 77 (2d Cir. 1991) (district court correctly dismissed counts purporting to plead breach of fiduciary obligations by corporate officers, since those claims could only be asserted derivatively on behalf of the corporation).

(W.D.N.Y. Oct. 30, 2006); *accord Petrello v. White*, 412 F.Supp.2d 215, 229 (E.D.N.Y. 2006). "Courts have not applied Rule 9(b) to claims of constructive, rather than actual, fraud." *Cendant Corp. v. Shelton*, 474 F.Supp.2d 377, 380 (D.Conn. 2007); *see also Sullivan v. Kodsi*, 373 F.Supp.2d 302, 307 (S.D.N.Y. 2005) ("Claims of constructive fraud do not need to meet the heightened pleading requirements" of Rule 9(b)).

Constructive fraud claims, however, are still subject to the "plausibility" requirement of Rule 8 as enunciated in *Twombly*. In that respect, plaintiffs' constructive fraud claim fails because plaintiffs have failed to allege facts showing the existence of any fiduciary or confidential relationship between Apace and defendants. These entities and individuals appear to be nothing more than parties to a commercial transaction. *See @Wireless*, 2006 WL 3370696, at *9 (third-party plaintiff AI's "conclusory allegation that [third-party defendant] stood 'in a confidential, fiduciary and special relationship' to AI ... [was] insufficient to plead a fiduciary relationship" for purposes of constructive fraud claim). "Such a relationship requires a 'high degree of dominance and reliance,' and where the parties have an arm's length business relationship, a plaintiff's 'subjective claims of reliance on defendants' expertise' are insufficient" to allege a fiduciary relationship. *Id.* at *8 (quoting *SNS Bank, N.V. v. Citibank, N.A.*, 7 A.D.3d 352, 355 (1st Dep't 2004)). *See also Atlantis Info. Tech., GmbH v. CA, Inc.*, 485 F.Supp.2d 224 (E.D.N.Y. 2007) ("when parties deal at arms length in a commercial transaction, no relation of confidence or trust sufficient to find the existence of a fiduciary relationship will arise absent extraordinary circumstances"). "It is thus clear that a conventional business relationship, without more, does not become a fiduciary relationship by mere allegation." *Osan Ltd. v. Accenture LLPOsan Ltd.*, 454 F.Supp.2d 46, 57 (E.D.N.Y. 2006).

Here, the complaint simply alleges that plaintiffs were "novices" at investing and, in effect, that they placed almost blind trust in defendants' representations concerning NetSetGo. Based on the complaint, plaintiff would have us believe that plaintiffs handed over millions with little thought or due diligence.

Both Apace and NetSetGo were commercial companies, and Apace, despite its alleged financial naïveté, apparently had millions of dollars at its disposal.  In addition, many of the defendants were, like Apace, themselves investors in NetSetGo.  There is nothing in the complaint suggesting that plaintiffs were somehow prevented from ascertaining more accurate or detailed information about NetSetGo's financial condition and prospects before deciding whether to invest in it.  That plaintiffs, unwisely perhaps, chose not to do so does not give rise to a fiduciary relationship between them and defendants. *See Atlantis Info. Tech.*, 485 F.Supp.2d at 231-32 ("Both parties are commercial companies and although the Plaintiff contends that it had trust and confidence in the Defendant, that is not extraordinary.  Moreover, although the Plaintiff claims that the Defendant has superior knowledge, there is no allegation of obvious disparity between these parties").

**B. Alter Ego**

Count 10 of the amended complaint alleges a breach of contract claim against Levine, Empire, Cephas, Benedict, Campbell and Beers under an "alter ego" theory.  As the Second Circuit has explained, "under New York law, where the corporation is essentially an alter ego of a family or individual, the [corporate] veil may be pierced" and that family or individual held personally

liable for what were ostensibly the acts of the corporation.[7]  *Statharos v. New York City Taxi and Limousine Commission*, 198 F.3d 317, 324 (2ᵈ Cir. 1999) (citing *Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc.*, 933 F.2d 131, 138 (2ᵈ Cir. 1991)).

A party seeking to pierce the corporate veil under such a theory must generally show that: "(1) the owners exercised complete domination of the corporation in respect to the transaction attacked; and (2) that such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury." *Morris v. New York State Dep't of Taxation*, 82 N.Y.2d 135, 141 (1993); *accord Babitt v. Vebeliunas*, 332 F.3d 85, 91-92 (2ᵈ Cir. 2003); *In re Adler, Coleman Clearing Corp.*, 469 F.Supp.2d 112, 117-18 (S.D.N.Y. 2007).  Both of these elements must be established in order to justify application of the doctrine.  *See TNS Holdings, Inc. v. MKI Secs. Corp.*, 92 N.Y.2d 335, 339 (1998) ("Evidence of domination alone does not suffice without an additional showing that it led to inequity, fraud or malfeasance") (citing *Morris*, 82 N.Y.2d at 140-41).

Because "the Rule 9(b) pleading standard applies only to those components of fraud-based claims that relate to fraud[, ...] allegations of dominance and control ... are not subject to the heightened pleading standard, even where the veil-piercing claim is based on an allegation that the corporate form was abused to perpetrate fraud." *Sofi Classic*, 444 F.Supp.2d at 241.  Nevertheless, "[p]urely conclusory allegations cannot suffice to state a claim based on veil-piercing or alter-ego

_____

[7]Although the complaint generally refers to NetSetGo simply as a "company," it appears that it was a corporation; a June 22, 2001 letter from defendant Holmes to Klein (which is referred to in Paragraph 38 of the amended complaint) refers to it as "NetSetGo, Inc.," *see* Dkt. #62-6, and to Apace receiving shares of stock in NetSetGo in return for its investments. Amended Complaint ¶¶ 33, 44.  Paragraph 124 of the amended complaint also alleges that defendants "ignored the entity of the corporation ... ."

liability, even under the liberal notice pleading standard." *In re Currency Conversion Fee Antitrust Litig.*, 265 F.Supp.2d 385, 426 (S.D.N.Y. 2003).  *See, e.g., De Jesus v. Sears, Roebuck & Co., Inc.*, 87 F.3d 65, 70 (2[d] Cir. 1996) (complaint failed to allege "specific facts" supporting claim that fraudulent actions taken by corporate subsidiary's employees were "caused by, known to and ratified by" parent corporation, and claims against parent were therefore properly dismissed; "A complaint which consists of conclusory allegations unsupported by factual assertions fails even the liberal standard of Rule 12(b)(6)") (quoting *Palda v. General Dynamics Corp.*, 47 F.3d 872, 875 (7th Cir. 1995)); *Shenango Inc. v. American Coal Sales Co.*, No. 2:06-cv-149, 2007 WL 2310869, at *4 (W.D.Pa. Aug. 9, 2007) ("averments reciting elements of the veil-piercing test, without any supporting facts, constitute legal conclusions. Even under a notice pleading standard, as interpreted in *Twombly*, such averments cannot support a veil-piercing claim"); *EED Holdings v. Palmer Johnson Acquisition Corp.*, 387 F.Supp.2d 265, 274 (S.D.N.Y. 2004) ("To avoid dismissal, a party seeking application of the doctrine must come forward with factual allegations as to both elements of the veil-piercing claim"); *Metropolitan Transp. Auth. v. Triumph Advertising Productions, Inc.*, 497 N.Y.S.2d 673 (1st Dep't 1986) (conclusory allegations that corporate structure is a sham are insufficient to warrant piercing corporate veil).

The amended complaint alleges that defendants "ignored the entity of the corporation and treated the Company as a mere instrumentality or conduit for the transaction of their own private business, causing the Company to breach the Bridge Loan Agreement" between NetSetGo and Apace.  Dkt. #51 ¶ 124.  That conclusory allegation is not supported by any specific factual allegations, however.  *See Goldman v. Chapman*, ___ A.D.3d ___, 2007 WL 3105446, at *1 (2[d]

Dep't 2007) ("The mere claim that the corporation was completely dominated by the owners, or conclusory assertions that the corporation acted as their 'alter ego,' without more, will not suffice to support the equitable relief of piercing the corporate veil").  That defendants allegedly came up with and executed a plan to transfer NetSetGo's assets to a new company, Cephire, and thereby left Apace with no recourse to recover any of its investments in, or loans to, NetSetGo, does not demonstrate that defendants treated NetSetGo as their alter ego.  This claim is therefore subject to dismissal.  *See Playwell Toy, Inc. v. Bureau Veritas Consumer Products Services, Inc.*, No. 03-CV-0704, 2007 WL 2892031, at *11 (W.D.N.Y. Sept. 28, 2007) ("the allegations in the complaint as pleaded are conclusory and insufficient to pierce the corporate veil and impose liability on" the parent corporation).

Furthermore, although veil-piercing claims themselves are not subject to Rule 9(b), *see Sofi Classic*, 444 F.Supp.2d at 241, this cause of action does rest in part on allegations of fraud. *See* Amended Complaint ¶ 122 (alleging that defendants "formulated a plan to transfer the assets of the Company to a new entity, ultimately called Cephire, through a fraudulent sale ...").  To that extent, this claim is required to, but does not, comply with the pleading standards of Rule 9(b).


## C. Successor Liability

Count 8 of the amended complaint asserts a claim of successor liability against Empire, Cephas, and Cephire as alleged successors to NetSetGo.  This claim, however, does not state an independent basis for liability, but depends on the success of plaintiffs' other claims. *See Lippe v. Bairnco Corp.*, 249 F.Supp.2d 357, 384 (S.D.N.Y. 2003) (dismissing plaintiffs' claims for successor

liability and piercing the corporate veil, where underlying claims had been dismissed).  In addition, this claim, too, is ultimately premised on fraud, *see* Amended Complaint ¶ 114 (alleging that "Empire Beef and Cephas took over all of NetSetGo's business through a fraudulent transfer of assets"), and is therefore also subject to dismissal under Rule 9(b).

### D. Damage to Aggarwal's Reputation

Count 9 of the amended complaint asserts a claim against the Levines, Empire, Cephas, Benedict, Klein, Burke, Holmes and Campbell for damage to Aggarwal's reputation as a businessman in India and Singapore.  Dkt. #51 ¶¶ 117, 118.  This claim is time-barred.

There is authority that such claims are governed by a three-year statute of limitations.  *See Popkin v. National Benefit Life Ins. Co.*, 711 F.Supp. 1194, 1197 (S.D.N.Y. 1989).  There is also ample authority that a one-year limitations period applies to such claims.  *See, e.g.,  Besicorp Ltd. v. Kahn*, 290 A.D.2d 147, 150 (3$^d$ Dep't 2002) (claim for damage to plaintiff's reputation was governed by one-year statute of limitations of CPLR § 215); *accord Kartiganer Associates, P. C. v. Town of Newburgh*, 57 A.D.2d 857, 857 (2$^d$ Dep't 1997); *Four Directions Air, Inc. v. United States*, No. 5:06-CV-283, 2007 WL 2903942, at *5 (N.D.N.Y. Sept. 30, 2007); *Pasqualini v. MortgageIT, Inc.*, 498 F.Supp.2d 659, 670 (S.D.N.Y. 2007).

Even if a three-year period applies, however, this claim is time-barred.  The last date of any wrongful activity by defendants alleged in the amended complaint is December 2002.  *See* Dkt. #51 ¶ 62.  The original complaint was not filed until March 2007, and plaintiffs have offered no basis upon which to toll the commencement of the limitations period.  *See Commack Self-Service Kosher*

*Meats Inc. v. State*, 270 A.D.2d 687, 688 (3[d] Dep't 2000) ("the mere fact that claimants may continue to suffer damage to their reputation does not alter the fact that the [defendant's] unlawful conduct, if any, occurred five years before the claim was filed").

## IV. Leave to Amend

"Dismissals made pursuant to Rule 9(b) are 'almost always' accompanied by a grant of leave to amend ... ."  *Arnold Chevrolet LLC v. Tribune Co.*, No. 04-CV-3097, 2007 WL 2743490, at *7 (E.D.N.Y. Sept. 17, 2007) (granting leave to amend where, "[a]lthough Plaintiffs have already had one opportunity to amend, this is the first time Defendants have moved to dismiss under Rule 9(b)"). *See also In re Time Warner Inc. Securities Litigation*, 9 F.3d 259 (2[d] Cir. 1993) ("dismissal under Rule 9(b) is usually without prejudice").

In the case at bar, plaintiffs' counsel, at oral argument, requested leave to amend should the Court find the amended complaint not to be in compliance with Rule 9(b).  Although defendants contend that further leave to amend should be denied as futile, I believe that the best course of action here is to dismiss the amended complaint without prejudice, and to allow plaintiff to move for leave to file a second amended complaint, together with a proposed second amended complaint.  If the Court determines that the proposed second amended complaint again fails to meet the pleading requirements of Rule 9(b), plaintiffs' claims will be subject to dismissal with prejudice.  *See Estate of Axelrod v. Flannery*, 476 F.Supp.2d 188, 197 (D.Conn. 2007) ("in circumstances where plaintiffs 'specifically request leave to amend in the event that the court is inclined to dismiss on Rule 9(b) grounds, the failure to grant leave to amend is an abuse of discretion unless the plaintiff has acted

in bad faith or the amendment would be futile'") (quoting *Caputo v. Pfizer, Inc.*, 267 F.3d 181, 191 (2d Cir. 2001)).[8]

## CONCLUSION

Plaintiffs' motions for leave to amend the complaint (Dkt. #52, #75) are denied.

The motions to dismiss filed by defendants Steven and Lori Levine (Dkt. #37, #64), David Klein (Dkt. #41, #63, #70), Cephas Capital Partners, LP, Jeffrey Holmes, and Clint Campbell (Dkt. #45, #62), and Jeffrey Burke (Dkt. #60) are granted, and the complaint is dismissed. The Clerk of the Court is directed not to close this case at this time, however.

Plaintiffs shall have thirty (30) days from the date of entry of this Decision and Order to file a second motion for leave to file an amended complaint, together with a proposed amended complaint. Defendants shall have thirty (30) days after the date of filing of plaintiffs' motion to file their responses to the motion.

The claims against Steven Hyde and David Grainger are dismissed with prejudice. Defendant Hyde's motion to dismiss the complaint (Dkt. #47) is denied as moot.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       November 16, 2007.

---

[8]I remind counsel, however, that in attempting to supply enough factual detail to comply with Rule 9(b), he must also remain mindful of his obligations under Rule 11. *See Paul E. Appelbaum DMD, Inc. v. Sinclair*, No. 96 CV 1943, 1997 WL 619849, at *7 (N.D.Ill. Sept. 30, 1997).