# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NEW YORK

_____

APACE COMMUNICATIONS, LTD.,

Plaintiff,

vs.

JEFFREY BURKE, DAVID KLEIN, MICHAEL
BENEDICT, STEVEN LEVINE, LORI LEVINE,
CEPHAS CAPITAL PARTNERS, LP, JEFFREY
HOLMES, CLINT CAMPBELL, CEPHIRE
TECHNOLOGIES, INC., and TIMOTHY BEERS,

Defendants.

_____

Case No. 07-CV-6151

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFF'S MOTION TO AMEND COMPLAINT

McCONVILLE, CONSIDINE,
   COOMAN & MORIN, P.C.
_Local Counsel for plaintiff_
PETER J. WEISHAAR , ESQ.
25 East Main Street
Rochester, New York 14614
Telephone: (585) 546-2500

FOLEY & LARDNER LLP
_Attorneys for plaintiff_
BYRON L. GREGORY, ESQ.
321 North Clark Street, Suite 2800
Chicago, IL  60610-4764
Telephone: (312) 832-4500

## PRELIMINARY STATEMENT

This memorandum of law is being submitted on behalf of the plaintiff, Apace Communications, Ltd. ("Apace"), in support of its motion for leave to file a second amended complaint.[1]

On November 16, 2007, this Court denied plaintiff's motion for leave to amend the complaint and dismissed the complaint in response to motions to dismiss filed by several of the defendants. *Apace Communications, Ltd. v. Burke*, ___ F. Supp. 2d ___, 2007 WL 4125232 (W.D.N.Y. 2007). However, in response to counsel's oral argument request for leave to further amend in the event of a dismissal, the Court specifically granted plaintiff's request to file a motion for leave to file a second amended complaint, together with a proposed second amended complaint. Apace now seeks leave from the Court to file a second amended complaint.

At issue in this case are Apace's investment in, and loan to, NetSetGo, Inc. ("NSG") totaling $8,000,000, induced by defendants' false representations, among others, that in return for Apace's investment of $5,500,000 in NSG, NSG would provide $1,500,000 of business to Apace's sister company, Cresco Technologies PVC, Ltd. ("Cresco") and Apace would be given 62% of the voting stock in NSG, sufficient to provide Apace with control over NSG, and in return for Apace's loan of $2,500,000 to NSG, Apace would be assigned the unsubordinated security interest of Key Bank, which was superior in sequence and scope as to all other security interests in NSG's assets, including those held by Cephas Capital Parthers, LP ("Cephas") and Steven and Lori Levine. But NSG, as demonstrated in the proposed second amended complaint, was the mere

---

[1]Only the claims of the corporate plaintiff are being pursued on this motion. The claims of the individual plaintiff, Rakesh Aggarwal, are no longer being prosecuted.

instrumentality or alter-ego of both Cephas and the Levines and never did, and never intended to

do, business with Cresco, and never gave, and never intended to give, Apace control over NSG,

and never provided, and never intended to provide, Apace with the security interest.

Further, both Cephas and Levine, after having put in $1,500,000 and $500,000 respectively

in NSG in 1999, controlled NSG's very existence, and eventually took over all of NSG's assets,

worth approximately $11,500,000 according to NSG's then most current financial statements,

paying no more than $200,000 in a sham UCC sale, for which minimum notice was given and no

approval was obtained from NSG's Board of Directors.  These actions are more fully set forth in

the proposed second amended complaint.

As demonstrated below, Apace is entitled to an order from this Court granting leave to

further amend the complaint.

<u>**ARGUMENT**</u>

**LEAVE TO AMEND THE COMPLAINT SHOULD BE GRANTED BECAUSE THE PROPOSED SECOND AMENDED COMPLAINT COULD WITHSTAND A MOTION TO DISMISS.**

When a party may not otherwise amend its pleading "as a matter of course," Rule 15(a)

provides that "a party may amend its pleading only with the opposing party's written consent or

the court's leave." FED. R. CIV. P. 15(a)(2).  Rule 15 further declares that "[t]he court should freely

give leave when justice so requires." *Id.  See also, Forman v. Davis*, 371 U.S. 178, 182 (1962)

(noting that "Rule 15(a) declares that leave to amend 'shall be freely given when justice so

requires'; this mandate is to be heeded").  Indeed, the Supreme Court has instructed that:

> In the absence of any apparent or declared reason–such as undue
> delay, bad faith or dilatory motive on the part of the movant,
> repeated failure to cure deficiencies by amendments previously

3

> allowed, undue prejudice to the opposing party by virtue of
> allowance of the amendment, futility of amendment, etc.–the leave
> sought should, as the rules require, be "freely given."

*Id.  See also, Monahan v. New York City Dep't of Corrections*, 214 F.3d 275, 283 (2d Cir. 2000)

("absent evidence of undue delay, bad faith or dilatory motive on the part of the movant, undue

prejudice to the opposing party, or futility, Rule 15's mandate must be obeyed").

Defendants can point to no evidence of undue delay or dilatory motive on Apace's part in

making this motion.  Nor can defendants point to any undue prejudice by virtue of allowing these

proposed amendments.  Although defendants are likely to argue that plaintiff's motion should be

denied as futile, such an argument would fail.  Leave to amend should be "freely given" here

because the proposed second amended complaint would withstand a motion to dismiss.  *See,*

*Dougherty v. Town of North Hempstead Board of Zoning Appeals*, 282 F.3d 83, 87-88 (2d Cir.

2002) (noting that a proposed "amendment to a pleading will be futile if a proposed claim could

not withstand a motion to dismiss").

A.    **Apace's fraud based claims in the proposed second**
**amended complaint would withstand a motion to**
**dismiss.**

Plaintiff's proposed second amended complaint asserts a claim for fraud, as well as claims

based on the underlying fraud claim.  To survive a motion to dismiss, the factual allegations in the

complaint "must be enough to raise a right to relief above the speculative level, on the assumption

that all the allegations in the complaint are true (even if doubtful in fact)."  *Bell Atlantic Corp. v.*

*Twombly*, 127 S. Ct. 1955, 1965 (2007) (internal citation omitted).  Indeed, the Supreme Court has

observed that "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual

proof of those facts is improbable, and that a recovery is very remote and unlikely."  *Id*. (internal

quotations omitted). "[W]hen a complaint adequately states a claim, it may not be dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder." *Id.* at 1969, n.8.

In order to state a cause of action for fraud under New York law in this diversity action, "'a plaintiff must allege a representation of material fact, the falsity of the representation, knowledge by the party making the representation that it was false when made, justifiable reliance by the plaintiff and resulting injury.'" *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 291 (2d Cir. 2006) (quoting *Kaufman v. Cohen*, 760 N.Y.S.2d 157, 165 (N.Y. App. Div. 1st Dep't 2003)). Each of plaintiff's fraud claims must also meet the pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure, which provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). However, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Id.*

The Second Circuit has noted that "Rule 9(b) is intended to provide a defendant with fair notice of a plaintiff's claim, to safeguard a defendant's reputation from improvident charges of wrongdoing, and to protect a defendant against the institution of a strike suit." *Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 52 (2d Cir. 1995) (internal quotations omitted). Thus, plaintiffs asserting fraud claims are still required to allege facts that give rise to a strong inference of fraudulent intent, which "may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Id.* (internal quotations omitted).

In dismissing plaintiff's first amended complaint, the Court was troubled by what it characterized as plaintiff's "sweeping, undifferentiated allegations" of fraud and noted that "'Rule 9(b) does not allow a complaint to merely lump multiple defendants together but 'require[s] plaintiffs to differentiate their allegations when suing more than one defendant and inform each defendant separately of the allegations surrounding his alleged participation in the fraud.'" *Apace*, 2007 WL 4125232 at *6 (quoting *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007)). Plaintiff's proposed second amended complaint addresses this concern, and wherever possible, the statements and representations made to Apace and its representative have been set forth with particularity, and documents containing false statements and representations have been attached to the proposed second amended complaint as exhibits.

Count I of the proposed second amended complaint now contains numerous allegations of fraudulent statements and representations made by particular defendants on particular dates. *See, e.g.*, Proposed Second Amended Complaint at ¶ 32 (statements made by Burke to Aggarwal during a telephone conversation on March 28, 2001); ¶ 33 (misleading documents provided by Klein to Aggarwal following Burke's March 28, 2001 telephone conversation); ¶¶ 38-47 (statements made by various named defendants to Aggarwal during a May 13, 2001 meeting attended by Campbell, Holmes, Burke, Klein and others); and ¶¶ 64-67 (statements made by various named defendants to Aggarwal during a September 9, 2001 meeting attended by Campbell, Holmes, Burke, Levine, Klein and others).

The proposed amended complaint also alleges facts that give rise to a strong inference of fraudulent intent which is established by the allegations showing that defendants had both motive and opportunity to commit fraud. Cephas and Levine–the secured creditor defendants–and their

agents and principals sought to induce Apace to invest additional money in NSG in order to protect their positions as secured creditors to insure that there was sufficient money available for their loans to be repaid and to prop up the corporation long enough for them to implement their plan to siphon all of NSG's assets to the corporation that they jointly set up to purchase the NSG's assets, Cephire Technologies, Inc. ("Cephire"), through a sham UCC sale. Cephas and the Levines also benefitted from the fraudulent representation to Apace that it would receive an assignment of a third party's unsubordinated security interest for its $2,500,000 bridge loan. As a result of this inducement, Apace made the loan, but the security interest was never provided because Cephas and the Levines would not permit their security interests to be rendered subordinate to that of Apace.

The NSG defendants–Burke, Klein, and Benedict–were more than willing to cooperate with the scheme of the secured creditor defendants because each stood to gain personally. Burke and Klein directly capitalized on the fraud by using Apace's investments to pay off Key Bank's $800,000 loan to NSG which, unknown to Apace at the time, Burke and Klein had personally guaranteed. Benedict also personally benefitted from the fraud by agreeing with the secured creditor defendants to assume responsibility for transitioning the NSG business into Cephire, and subsequently taking the chief executive and director's positions in that new entity, into which NSG's assets were fraudulently transferred. Moreover, Burke, Klein, and Benedict were all shareholders and employees of NSG who sought to personally protect their investments and employment by inducing Apace, through their misrepresentations, to prop up the corporation by investing $5,500,000 in NSG stock and loaning the corporation an additional $2,500,000.

Apace's proposed second amended complaint adequately sets forth a claim for fraud, as

well as the claims based on the underlying fraud. Therefore, based on the foregoing, leave should be freely given to file the proposed second amended complaint.

> **B. Apace's constructive fraud and fiduciary duty claims in the proposed second amended complaint would survive a motion to dismiss.**

"The elements of constructive fraud are the same as those for actual fraud, except that the element of scienter is replaced by a fiduciary or confidential relationship between the parties." *@Wireless Enterprises, Inc. v. AI Consulting, LLC*, 2006 WL 3370696 at *8 (W.D.N.Y. 2006). Ordinarily, "when parties deal at arms length in a commercial transaction, no relation of confidence or trust sufficient to find the existence of a fiduciary relationship will arise absent extraordinary circumstances." *Atlantis Info. Tech, GmbH v. CA, Inc.*, 485 F. Supp. 2d 224, 231 (E.D.N.Y. 2007) (quotations omitted). However, Apace contends that its lack of United States business experience combined with the close relationship between Apace's agent, Aggarwal, and NSG's board member, Dr. Mohan Chelleppa, which was exploited by the defendants, created the extraordinary circumstances which should give rise to a fiduciary relationship in this case. *See, e.g., Allen v. Westpoint-Pepperell, Inc.*, 945 F.2d 40, 45 (2d Cir. 1991) ("Under New York law, a fiduciary relationship includes 'both technical fiduciary relations and those informal relations which exist whenever one [person] trusts in, and relies upon, another.").

In Counts II and III of its second amended complaint, Apace has plead the facts giving rise to the fiduciary duty owed to it by Burke, Klein, Benedict, Cephas, Campbell, Holmes, and the Levines. Specifically, Burke and Klein owed a fiduciary duty to Apace because they used Dr. Chelleppa, a board member and shareholder of NSG who was a close personal friend and trusted business associate of Aggarwal, and a fiduciary to Aggarwal and Apace, as their and NSG's agent

to induce Apace to invest in NSG. Additionally, Burke, Klein, Benedict, Cephas, Campbell, and Holmes, who all had knowledge of NSG greater than Apace, volunteered to present Apace with honest and complete information about NSG, making them Apace's fiduciaries with respect to its investment. Burke, Klein, and Benedict were also directors and officers of NSG who owed Apace a fiduciary duty upon its becoming a shareholder of NSG. *See, e.g., Alpert v. 28 Williams St. Corp.*, 63 N.Y.2d 557, 568 (1984) (noting that directors and majority shareholders "have an obligation to all shareholders to adhere to fiduciary standards of conduct and to exercise their responsibilities in good faith when undertaking any corporate action"). Burke, Klein, and Benedict also owed Apace a fiduciary duty as co-shareholders of NSG, a close corporation. *See, e.g., Cassata v. Brewster-Allen-Wichert, Inc.*, 248 A.D.2d 710, 711 (2d Dep't 1998) ("The shareholders of a close corproation owe each other a duty to act in good faith"). Cephas and the Levines were the alter-egos of NSG who controlled the actions of NSG's directors and agents, Chelleppa, Burke, Klein, and Benedict, and therefore owed a fiduciary duty to Apace. Finally, Campbell, Holmes, and Beers were fiduciaries to Apace as the agents of Cephas, the alter-ego of NSG.

Because the proposed amended complaint sufficiently sets forth the facts giving rise to the fiduciary duties owed by the defendants to Apace and to the misrepresentations and breaches that give rise to its constructive fraud and breach of fiduciary duty claims, leave should be freely given to file the proposed second amended complaint.

9

**C.    Plaintiff's negligent misrepresentation claim in the proposed second amended complaint would survive a motion to dismiss.**

In order to establish liability under a negligent misrepresentation claim, the New York Court of Appeals has held that "the evidence must demonstrate (1) an awareness by the maker of the statement that it is to be used for a particular purpose; (2) reliance by a known party on the statement in furtherance of that purpose; and (3) some conduct by the maker of the statement linking it to the relying party and evincing its understanding of that reliance." *Parrott v. Coopers & Lybrand, LLP*, 95 N.Y.2d 479, 484 (2000) (quotations omitted).

The proposed second amended complaint sufficiently sets forth allegations supporting this claim. The defendants made numerous representations to Apace that they knew were being relied upon by Apace in connection with its decisions with respect to NSG. As such, leave should be freely given to file this proposed second amended complaint.

**D.    Plaintiff's conspiracy claim in the proposed second amended complaint would survive a motion to dismiss.**

"[A] civil conspiracy is a concern or combination to defraud or cause injury to persons or property which results in damage to [the] plaintiff." *Chase Manhattan Bank, N.A. v. Perla*, 65 A.D.2d 207, 211 (4th Dep't 1978) (quotation omitted). "[I]f the complaint contains averments of such a conspiracy, coupled with allegations that the acts were committed with the specific intent to cause injury to plaintiff, it states a cause of action." *Id.*

As more fully set forth in Count V of the proposed second amended complaint, the defendants were drawn by their common motives to conspire or honor the conspiracy between Cephas and the Levines to defraud Apace, to maintain control of NSG, and thereafter to

10

orchestrate the sale of the assets to their new corporation. The conspiracy, as intended, caused damage to Apace. By Cehpas', Holmes', Campbell's, the Levines', Burke's, Klein's, and Benedict's conspiratorial actions to commit fraud, constructive fraud, negligent misrepresentation, and breaches of their fiduciary duties as more fully described in Counts I through IV of the proposed second amended complaint, Apace was injured. Thus, the proposed second amended complaint states a cause of action for conspiracy.

> **E.    Plaintiff's agency claim in the proposed second amended complaint would survive a motion to dismiss.**

As demonstrated by the allegations in Count VI of the proposed second amended complaint, NSG and its officers and employees–Benedict, Burke, Beers, and Klein–were agents of Cephas and the Levines. Burke, Klein, Beers, and Benedict were directed by, and agreed to take actions on behalf of Cephas and the Levines which were intended to, and did, defraud Apace. Thus, all of the actions taken by Burke, Klein, Beers, and Benedict as reflected in Counts I through IV of the proposed second amended complaint fell within the scope of Cehpas' and the Levines' directions, and therefore are imputed to them as the principals, along with the liability that results from such actions. *See, Id.* (noting that a principal is liable "for the fraudulent acts of her agent committed within the scope of his authority" and if he acted outside his authority, "she is similarly liable if she later ratified his fraudulent acts and retained the benefits derived from them").

> **F.    Plaintiff's fraudulent conveyance and successor liability claims in the proposed second amended complaint would survive a motion to dismiss.**

As alleged in Count VII of the proposed second amended complaint, Benedict, Cephas, Holmes, Campbell, Beers, and the Levines implemented a plan that allowed NSG to be drained

of its assets by misdirecting money and employees of NSG, arranging for the key customers, employees, and suppliers to become part of Cephire, the successor to NSG, and on the heels of this plan, conducted a sham UCC foreclosure sale under Article 9. This fraudulent asset sale combined both the remaining assets of NSG with the unsecured assets of NSG's subsidiaries, to be sold on a bulk-sale basis, providing the Levines and Cephas with assets having a vastly greater value than the amount of their outstanding loans to NSG.

As further alleged in the proposed second amended complaint, the foreclosure sale was not conducted in a reasonably commercial manner. The assets were transferred as part of an insider fraud by which the NSG Board was never consulted, payment was shockingly below the value of the assets' worth, and Cephire was assured the right to purchase without any competition due to the bulk-sale nature of the auction, the paper thin notice designed to result in minimal bidder awareness and participation, and the complete absence of any competition, damaging Apace in an amount in excess of $8,000,000.

As more fully set forth in Count VIII of the proposed second amended complaint, the Levines and Cephas, as partners, shareholders, and secured creditors in Cephire, are the mere successors to NSG and, therefore, are liable for all of Apace's losses arising out of the wrongful conduct of NSG's agents, including Burke, Klein, Beers, and Benedict. These actions led to Apace's investments in NSG and its subsequent losses due to the Levines and Cephas. Under the scheme perpetrated by Cephas and the Levines, there is continuity of ownership, a cessation of business operations by NSG, the assumption of only those liabilities necessary for the Levines and Cephas to continue the operation of NSG, and a continuity of management, personnel, assets, and general business operations. *See, e.g., Lumbard v. Maglia, Inc.*, 621 F. Supp. 1529, 1535

12

(S.D.N.Y. 1985) (setting forth the factors that tend to show that the asset transfer was a *de facto* merger thus triggering successor liability).

## **CONCLUSION**

Apace's proposed second amended complaint would survive a motion to dismiss. Thus, leave should be freely given to permit Apace to file its proposed second amended complaint because such amendment would not be futile. Apace therefore requests an order from this Court granting leave to file its proposed second amended complaint, together with such other, further, or different relief, as to the Court may seem just and proper.

Dated:  January 4, 2008

McCONVILLE, CONSIDINE,
  COOMAN & MORIN, P.C.
Local Counsel for plaintiff

    s/Peter J. Weishaar
Peter J. Weishaar, Esq.
25 East Main Street
Rochester, New York  14614
Telephone:  (585) 546-2500
pweishaar@mccmlaw.com

FOLEY & LARDNER LLP
Attorneys for plaintiff
Byron L. Gregory, Esq.
321 North Clark Street, Suite 2800
Chicago, Illinois  60610-4764
Telephone:  (312) 832-4500
bgregory@foley.com

TO:    WOODS OVIATT GILMAN LLP
       Attorneys for defendant Michael Benedict
       William G. Bauer, Esq.
       700 Crossroads Building
       2 State Street
       Rochester, New York  14614
       wbauer@woodsoviatt.com

       LECLAIR KORONA GIORDANO COLE, LLP
       Attorneys for defendant Jeffrey Burke
       Laurie A. Giordano, Esq.
       Steven E. Cole, Esq.
       39 State Street, Suite 500
       Rochester, New York  14614
       lgiordano@leclairkorona.com
       scole@leclairkorona.com

       UNDERBERG & KESSLER
       Attorneys for defendant Cephire Technologies, Inc.
       Paul Keneally, Esq.
       300 Bausch & Lomb Plaza
       Rochester, New York  14604
       pkeneally@underberg-kessler.com

       HARRIS BEACH LLP
       Attorneys for defendants Cephas Capital Partners, LP,
            Jeffrey Holmes and Clint Campbell
       Philip G. Spellane, Esq.
       99 Garnsey Road
       Pittsford, New York  14534
       pspellane@harrisbeach.com

       WARD, NORRIS, HELLER & REIDY, LLP
       Attorneys for defendant David Klein
       Russell I. Zuckerman, Esq.
       Jeffrey J. Harradine
       300 State Street, 6th Floor
       Rochester, New York   14614
       riz@wnhr.com

KAMAN, BERLOVE, MARAFIOTI,
  JACOBSTEIN & GOLDMAN
Attorney for defendants Steven Levine and Lori Levine
Richard G. Curtis, Esq.
130 Corporate Woods, Suite 300
Rochester, New York  14623
rcurtis@kamanesq.com

156226.WPD

15