UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

APACE COMMUNICATIONS, LTD.,
RAKESH AGGARWAL,

                                    Plaintiffs,

                                                        DECISION AND ORDER

                                                        07-CV-6151L

                        v.

JEFFREY BURKE,
DAVID KLEIN,
MICHAEL BENEDICT,
STEVEN LEVINE,
LORI LEVINE,
CEPHAS CAPITAL PARTNERS, LP
JEFFREY HOLMES,
CLINT CAMPBELL,
CEPHIRE TECHNOLOGIES,
TIMOTHY BEERS,

                                    Defendants.
_____

       Plaintiff, Apace Communications, Ltd. ("Apace"), filed the complaint in this action on March 16, 2007, alleging fraud and other claims against a number of defendants, including David Klein. Jurisdiction is premised on diversity of citizenship under 28 U.S.C. § 1332.

       By Decision and Order filed November 16, 2007, *see* 522 F.Supp.2d 509, this Court granted defendants' motion to dismiss the amended complaint, but allowed plaintiff to file a motion for

leave to file a second amended complaint. Plaintiff did so, that motion was eventually granted, and plaintiff filed the second amended complaint on November 14, 2008 (Dkt. #103).

Defendant David Klein now moves to dismiss the claims against him for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. Klein asserts that he changed his domicile from New York to the United Kingdom ("UK") prior to the commencement of this action. Klein contends that this renders him a "stateless" United States citizen, and that diversity of citizenship for jurisdictional purposes is therefore lacking.

The relevant facts are essentially undisputed; what the parties disagree about is the inferences to be drawn from those facts. Until early 2007, Klein was a domiciliary of New York State. At some point prior to the March 16, 2007 commencement of this action, however, Klein accepted and began long-term employment in the UK, as the chief financial officer for Constellation Europe, Ltd. ("Constellation"), a wholly-owned subsidiary of Constellation Brands, Inc.

It is undisputed that after plaintiff accepted that position, he secured housing in the UK, opened a bank account there, and obtained UK work and residency permits of indefinite duration for himself and his wife. Klein further contends, and plaintiff does not dispute, that he also sold his house in New York, and that he either sold, or sent to the UK, all of his personal property. Klein also resigned from his position as treasurer of a Rochester, New York nonprofit organization.

Klein did, however, retain some ties to New York State. Specifically, he maintained his New York voting registration, his New York State driver's license, and his New York-based bank account. Apace also contends, and Klein does not appear to dispute, that as of the date of filing of

the complaint in this action, Klein had not joined any social, charitable, or religious organizations in the UK.

Based on the undisputed facts before me, I conclude as a matter of law that Klein had changed his domicile to the UK prior to the commencement of this action on March 16, 2007. Klein's motion to dismiss is therefore granted.

## DISCUSSION

**I. General Principles**

A court deciding a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction applies a standard similar to that applicable to a Rule 12(b)(6) motion to dismiss for failure to state a claim. *Arrigoni Enterprises, LLC v. Town of Durham*, 606 F.Supp.2d 295, 297 (D.Conn. 2009). *See also Friedlander v. Port Jewish Center*, 588 F.Supp.2d 428, 430 (E.D.N.Y. 2008) (standard for reviewing a 12(b)(1) motion to dismiss is "essentially identical to the 12(b)(6) standard," except that plaintiff has burden of proving by a preponderance of the evidence that subject matter jurisdiction exists, and court may consider materials beyond the pleadings).

When presented with a Rule 12(b)(1) motion challenging the court's subject matter jurisdiction, a district court "may resolve the disputed jurisdictional fact issues by referring to evidence outside of the pleadings, such as affidavits, and if necessary, hold an evidentiary hearing." *Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000); *see also Katz*, 737 F.2d at 242 n. 2 ("the question of jurisdiction need not be submitted to a jury"). "[T]he

district court need not hold a hearing on a Rule 12(b)(1) motion in the absence of complex legal or factual questions," however. *Rich v. United States*, 119 F.3d 447, 449 n.1 (6th Cir. 1997), *cert. denied*, 523 U.S. 1047 (1998); *see also Judkins v. HT Window Fashions Corp.*, 514 F.Supp.2d 753, 759 (W.D.Pa. 2007) ("Where none of the material facts are in dispute, a hearing is not required" on a Rule 12(b)(1) motion).

As stated, the relevant facts here are essentially undisputed. The question before me is simply whether those facts indicate that Klein had changed his domicile prior to the commencement of this lawsuit. Accordingly, I conclude that no hearing is required to resolve Klein's motion. *See McCann v. Newman Irrevocable Trust*, 458 F.3d 281, 290-91 (3d Cir. 2006) (district court did not err in deciding Rule 12(b)(1) motion without a hearing, since "the accuracy of the facts submitted by the parties was not in dispute. What was in dispute was the estate's allegation that these facts demonstrated a change of domicile").

Diversity jurisdiction under 28 U.S.C. § 1332 requires that all adverse parties to an action be "completely diverse in their citizenships." *Herrick Co. v. SCS Communications, Inc.*, 251 F.3d 315, 322 (2d Cir. 2001). In determining whether diversity of citizenship exists, it is the date on which the complaint was filed that controls. *See Bank One, Texas, N.A. v. Montle*, 964 F.2d 48, 49 (1st Cir. 1992) ("Domicile is determined as of the time the suit is filed, and once diversity jurisdiction is established, it is not lost by a later change in domicile"); *Bogan v. Northwestern Mut. Life Ins. Co.*, 103 F.Supp.2d 698, 700 (S.D.N.Y. 2000) ("For diversity purposes, the relevant date in determining a party's domicile is the date on which the complaint was filed–actions subsequent to that date, such

as changing addresses or moving residences, are inconsequential") (citing *Mollan v. Torrance*, 22 U.S. 537, 539 (1824)).

United States citizens domiciled abroad are not considered to be citizens of any particular state of the United States or of a foreign state for diversity purposes. *Herrick*, 251 F.3d at 322. Consequently, § 1332 does not provide federal courts with jurisdiction over such citizens. *Id.*; *see also Swiger v. Allegheny Energy, Inc.*, 540 F.3d 179, 184 (3d Cir. 2008) ("An American citizen domiciled abroad, while being a citizen of the United States is, of course, not domiciled in a particular state, and therefore such a person is 'stateless' for purposes of diversity jurisdiction," and "cannot be sued (or sue) in federal court based on diversity jurisdiction").

Determining a party's citizenship presents a mixed question of fact and law. *Palazzo v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000). A party's citizenship is determined by his domicile, which has been defined as the place where he has "his true fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning." *Linardos v. Fortuna*, 157 F.3d 945, 948 (2d Cir. 1998).

To effect a change in domicile, two requirements must be satisfied. First, the party must reside in a new domicile, and second, the party must have the intention to remain there indefinitely. *Palazzo*, 232 F.3d at 42. The party need not intend the change to be "permanent," but only intend to "remain at the new home for an indefinite period." 13B Charles Alan Wright et al., *Federal Practice & Procedure* § 3613, at 550-51 (3d ed. 2002); *see, e.g.*, *Gilbert v. David*, 235 U.S. 561, 569 (1915) ("If a person has actually removed to another place, with an intention of remaining there for an indefinite time, and as a place of fixed present domicil, it is to be deemed his place of domicil,

notwithstanding he may entertain a floating intention to return at some future period"); *Gutierrez v. Fox*, 141 F.3d 425, 429 (2d Cir. 1998) ("in order to change one's domicile, one must be present in the new domicile and have an intent to remain there indefinitely"); *Hardin v. McAvoy*, 216 F.2d 399, 402 (5th Cir. 1955) ("If the new state is to be one's home for an indefinite period of time, he has acquired a new domicile"); *Blanton v. Geist*, No. 07-cv-980, 2008 WL 1929908, at *2 (M.D.Ala. Apr. 29, 2008) ("A person does not have to intend to remain in the new state permanently to change the domicile"); *Hicks v. Brophy*, 839 F.Supp. 948, 950 (D.Conn. 1993) (intent to change domicile does not require that person have affirmative intent to remain permanently in new jurisdiction, but "merely that he has no present intent to move" elsewhere). Both physical presence and intent to remain are required for a change in domicile to occur; either without the other is insufficient. *Palazzo*, 232 F.3d at 42.

The party invoking diversity jurisdiction bears the burden of proving that it exists and that diversity of citizenship is complete. *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *Herrick*, 251 F.3d at 322-23. Courts have also held, however, that a party challenging the existence of diversity jurisdiction based on an alleged change of domicile has the burden of proving the change of domicile by clear and convincing evidence. *Palazzo*, 232 F.3d at 42; *Katz v. Goodyear Tire & Rubber Co.*, 737 F.2d 238, 244 (2d Cir. 1984); *see also Desmare v. United States*, 93 U.S. 605, 610 (1877) ("Where a change of domicile is alleged, the burden of proof rests upon the party making the allegation").

As the Second Circuit observed in *Herrick*, the rule requiring the party invoking federal jurisdiction to prove diversity, and the rule requiring a party alleging a change in domicile to prove

that change, "cut in opposite directions." 251 F.3d at 323. The court in *Herrick* resolved the tension between those two rules by holding that the party invoking diversity jurisdiction bears "the burden of persuasion in establishing specific initial domiciles that support the existence of diversity jurisdiction," and that once such an initial showing has been made, the burden shifts to the opposing party to show that a change of domicile has occurred. *Id.* at 324.

In determining whether a party has demonstrated his intent to remain or become domiciled in a particular state or country, "courts may look to a number of factors, including the person's state of residence; the state where his family resides; whether he owns or rents property; or where he keeps his personal belongings, exercises his political rights, maintains religious or social affiliations, pays taxes or holds a driver's license." *Braten v. Kaplan*, No. 07 Civ. 8498, 2009 WL 614657, at *3 (S.D.N.Y. Mar. 10, 2009); *accord Boston Safe Deposit and Trust Co. v. Morse*, 779 F.Supp. 347, 349 (S.D.N.Y. 1991); *National Artists Mgmt. Co. v. Weaving*, 769 F.Supp. 1224, 1228 (S.D.N.Y. 1991); *see also Herzberg v. MegaSpirea Productions SAS*, No. 07 CIV. 10503, 2009 WL 702234, at *2 (S.D.N.Y. Mar. 10, 2009) (adding party's place of employment, automobile registration, location of bank accounts, telephone listings, and other factors).

No single factor, or particular combination of factors, is necessarily determinative. *Braten*, 2009 WL 614657, at *3. Nor should these factors be examined in a vacuum; the court must look at the totality of a party's conduct and his contacts with a forum in determining domicile, although the weight to be assigned to any given factor may vary from one case to another. *See*, *e.g.*, *National Artists Mgmt. Co.*, 769 F.Supp. at 1228 (giving "considerable weight" to place of residence of party's spouse and children).

Depending on the facts, evidence of a person's voting registration or behavior may carry some weight in determining the person's domicile, particularly where the dispute is over whether the person is domiciled in a particular state of the United States. *See*, *e.g.*, *Lundquist v. Precision Valley Aviation, Inc.*, 946 F.2d 8, 12 (1st Cir. 1991) (where applicable New Hampshire statute provided that "[e]very inhabitant of the state, having a fixed and permanent established domicile, ... shall have a right at any meeting or election, to vote in the town, ward, or unincorporated place in which he is domiciled," and that "[t]his domicile is the voter's residence to which, upon temporary absence, he has the intention of returning," plaintiff's registration to vote and actual voting in New Hampshire were "tantamount to a representation of New Hampshire domicile to voting officials" in that state).

But such an assessment must be made on a case-by-case basis, and on any given set of facts, a person's voting registration or behavior may not be especially probative of his domicile. *See*, *e.g.*, *Boston Safe Deposit and Trust*, 779 F.Supp. at 349 (stating that "[v]oting registration and voting are two different things," and concluding that "[l]ittle consideration should be given to Morse's mere registration to vote in Colorado"); *Alexander v. Trustees of Boston University*, 584 F.Supp. 282, 287 (D.Mass. 1984) ("The fact that a student, living out-of-state, has registered to vote in the state of the school, does not defeat a claim of citizenship in the home state"), *rev'd on other grounds*, 766 F.2d 630 (1st Cir. 1985).

Viewed as a whole, the uncontradicted facts before me indicate that Klein did change his domicile from New York to the UK prior to March 16, 2007, and, therefore, Apace cannot establish diversity jurisdiction over him. Klein has met his burden by clear and convincing evidence.

Several significant factors support that conclusion, including: Klein's acceptance of long-term employment, lease of a townhouse, and opening of a bank account in the UK; his wife's presence in the UK; Klein's sale of his New York residence, as well as his automobiles and other personal property that he did not take with him to the UK; and his resignation from a New York charitable organization.

Even when viewed collectively, however, the facts relied upon by Apace are insufficient to rebut Klein's showing that he had relocated to the UK prior to the commencement of this action. First, Klein's continued New York voter registration is entitled to little weight on the facts presented concerning foreign domicile. It is hardly remarkable that an American citizen living abroad would choose to remain eligible to vote in U.S. elections, and in order to do so, Klein was required to maintain his voting registration in the state in which he last resided. *See* Uniformed and Overseas Citizens Absentee Voting Act ("UOCAVA"), 42 U.S.C. § 1973ff, *et seq.*; *Romeu v. Cohen*, 265 F.3d 118, 129 (2d Cir. 2001) ("In ... the UOCAVA, Congress has compelled States in their elections for presidential electors to accept voters who are not residents of the State"). Klein's maintenance of his voting registration in New York therefore deserves little if any weight in this equation.

Klein's continued possession of a New York State driver's license is likewise insignificant. There is no requirement that a person surrender his New York driver's license upon moving out of the state, nor would one reasonably expect Klein to have done so when he left for the UK. In addition, though Apace has submitted a copy of a New York Department of Motor Vehicles document dated December 18, 2008, indicating that Klein's license was due to expire sometime in 2009 (the date, which corresponds to Klein's date of birth, has been blacked out), there is no

evidence that, as of the date of commencement of this lawsuit, Klein had recently taken any steps to renew his New York license beyond his move to the UK. Finally, Klein states, and plaintiff does not deny, that Klein was permitted to drive in the UK with his New York license for up to twelve months, only three of which had expired at the time that the complaint in this action was filed. On these facts, then, Klein's possession of a New York driver's license has virtually no bearing on his domicile as of March 16, 2007.

Klein's decision to maintain his New York-based bank account also means little, especially when viewed in the context of the other facts. In this era of internet banking, the physical location of one's bank is of less significance than it once was, since many transactions can be performed using a computer from anywhere in the world. Klein's assertion that he opened a new bank account in the UK on March 13, 2007 (which also stands unrebutted) further diminishes the significance of his maintaining a New York-based account.

The absence of evidence that Klein joined any social, charitable, or religious organizations in the UK prior to the commencement of this action likewise carries little weight in light of the surrounding circumstances. For one thing, Klein apparently resigned from his position with a charitable organization in New York around March 15, 2007. In addition, at the time this lawsuit was commenced, Klein had been residing in the UK for less than three months, and he had just assumed the role of chief financial officer for the European division of a multinational corporation. Under those circumstances, it would not be surprising if he had not joined or begun participating in organized groups or activities by March 16, 2007. It would thus be unreasonable to infer, based on

Klein's alleged failure to join any groups or organizations in the UK prior to the commencement of this lawsuit, that he therefore did not intend as of that date to remain in the UK indefinitely.

Apace also notes that as of March 16, 2007, Klein was living in a rented townhouse in the UK through a tenancy agreement signed by his employer, Constellation. The terms of that agreement permitted occupancy of the premises by Klein and his family "or any other employee" of Constellation *See* Def. Ex. B at 2, cl. 1(e).

That arrangement might be more significant had Klein not sold his residence in New York prior to March 16, 2007.[1] The undisputed fact that he *did* sell his New York home, however, is clearly indicative of an intent not to return to New York. *Cf. Tanon v. Muniz*, 312 F.Supp.2d 143, 149 (D.P.R. 2004) (fact that plaintiff never sold her residence in Puerto Rico indicated that she lacked intent to change her domicile to Florida). In contrast, the fact that Klein lived in a leased residence in the UK does not suggest that he considered his presence there to be merely transitory; living in rented quarters is not in itself indicative of an intent to remain in a place only temporarily. *See Finkelstein v. Wachtel*, No. 00 Civ. 2672, 2003 WL 1918309, at *3 (S.D.N.Y. Apr. 21, 2003) (while plaintiff had "substantial New York contacts," those contacts did not outweigh evidence that plaintiff was domiciliary of Connecticut, including evidence that he rented a house there).[2]

---

[1]Apace contends that Klein did not sign the deed conveying his New York residence to the new owners until March 19, 2007. It is reasonable to infer, however, that the sale had been agreed upon well before that date. The fact that the final, formal act of transfer did not occur until March 19, therefore, in no way undercuts Klein's contention that he had effectively changed his domicile prior to March 16.

[2]Klein has offered a plausible explanation for the existence and nature of the lease agreement: his lack of a credit history in the UK presented an obstacle to his purchasing a home there, and the lease agreement was designed to allow Constellation Europe to provide the use of
(continued...)

Finally, plaintiff cites evidence that Klein was physically present in New York on Friday, March 16, 2007–the date on which the complaint in this action was filed–and that he remained here through at least Monday, March 19, 2007. In light of all the other evidence, that is simply too slim a reed on which to premise an argument that Klein was a New York domiciliary as of March 16, 2007. An individual's "domicile ... can be established by demonstrating that the individual is physically present in the state *and* has an intent to remain indefinitely." *Garcia Perez v. Santaella*, 364 F.3d 348, 350 (1st Cir. 2004) (citing *Sun Printing & Publ'g Ass'n v. Edwards*, 194 U.S. 377, 383 (1904)) (emphasis added). Viewed in their totality, the facts here do not reasonably suggest that Klein intended, as of March 16, 2007, to *remain* a resident of New York, even if he was physically here on that date. *Cf. McEachron v. Glans*, 983 F.Supp. 330, 335 (N.D.N.Y. 1997) (fact that plaintiff was a patient at a hospital in Massachusetts on August 14, 1996, when complaint was filed in New York, did not defeat plaintiff's assertion that he was a New York resident as of that date; although plaintiff moved to long-term care facility in Massachusetts in October 1996, his August 1996 stay in Massachusetts was only temporary, and it was not yet known at that time where he would eventually be transferred for long-term care).

In short, by March 16, 2007, Klein had done virtually everything that would be expected of someone moving from New York to the UK. He had moved, sold, or otherwise disposed of his New York assets, and established significant new contacts with and in the UK. The few remaining

---

²(...continued)
the property to another of its employees in the event that Klein purchased a home in the UK prior to the expiration of the agreement. The Court need not give credence to those explanations, however, for even without them, the mere fact that a person lives in a leased dwelling upon taking a new job in a different country is simply unremarkable.

connections between Klein and New York State as of March 16, 2007 were not in any way inconsistent with a change of domicile, and when looked at in context of all the evidence before me, are insufficient to defeat Klein's clear and convincing showing that he had become a domiciliary of the UK prior to March 16, 2007.

## CONCLUSION

Defendant David Klein's motion to dismiss plaintiff's claims against him for lack of subject matter jurisdiction (Dkt. #106) is granted, and the complaint is dismissed as to David Klein.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       June 19, 2009.